UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DAVID R. SNYDER, ) | |
| ) | |
|   Plaintiff, ) | |
| ) | |
|   vs. ) | CAUSE NO. 1:10-cv-1019-WTL-MJD |
| ) | |
| J. BRADLEY KING, et al., ) | |
| ) | |
|   Defendants. ) | |

**ENTRY DISMISSING CASE FOR LACK OF SUBJECT MATTER JURISDICTION**

After reviewing the parties= motions for summary judgment, the Court was not certain that this case presented a live case or controversy. Because a case that does not present a live case or controversy must be dismissed for lack of subject matter jurisdiction, the Court ordered the parties to brief the issue. The Court, having reviewed the briefs of the parties, now concludes that this case must be dismissed for the reasons set forth below.

## I.  FACTUAL BACKGROUND

The relevant facts in this case are not in dispute. Plaintiff David Snyder was convicted of misdemeanor battery in 2008. While he was originally sentenced to probation and community service, his probation was revoked in February 2009 and he was incarcerated in the St. Joseph County Jail.

Snyder was released from jail in May 2009. In November 2009, when he attempted to vote in a special election, he was informed that he could not do so because his voter registration had been cancelled. In fact, Snyder had been removed from the voter registration records by the St. Joseph County Voter Registration Board ("the County Board") when it received notification that he was incarcerated pursuant to a statutory scheme which is discussed in detail below.

Snyder was free to re-register to vote upon his release from jail and remains free to do so at any time.

Snyder filed this suit against Defendants Linda Silcott and Pam Brunette ("the County Defendants"), each in her official capacity as a member of the County Board, and against Defendants J. Bradley King and Trent Deckard, each in his official capacity as Co-Director of the Indiana Election Division ("the Division"), alleging that his disenfranchisement violated the National Voter Registration Act of 1993 ("NVRA"), 42 U.S.C. § 1973gg, *et seq.*; the Help America Vote Act of 2002 ("HAVA"), 42 U.S.C. § 15301, *et seq.*; the Civil Rights Act of 1964, 42 U.S.C.§ 1971, *et seq.*; the First and Fourteenth Amendments to the United States Constitution; and Article 2, § 8 of the Indiana Constitution.  The Indiana Supreme Court, in response to a question certified by this Court at the request of the parties, held that "the Indiana General Assembly has authority under its general police power to disenfranchise persons incarcerated upon conviction of a crime, so long as the disenfranchisement lasts only for the duration of incarceration." *Snyder v. King*, 958 N.E.2d 764, 785-86 (Ind. 2011).  Following this holding, in order to prevail in this suit Snyder must demonstrate that his disenfranchisement during the period of his incarceration for a misdemeanor violated the United States Constitution.

To that end, Snyder has now filed a motion for summary judgment in which he argues that his disenfranchisement violated the Equal Protection Clause of the Fourteenth Amendment. In the Conclusion section of his brief in support of his motion for summary judgment, Snyder seeks entry of judgment as follows:

> Snyder is entitled to a declaratory judgment holding that Ind. Code § §
> 3-7-13-4, -5, and 3-7-46-1 and -2, and 35-41-1-6 are unconstitutional as applied to
> Plaintiff and on their face insofar as the State Defendants' policy is to apply those
> statutes to all incarcerated misdemeanants, and holding that the State Defendants
> violated Plaintiff=s rights under the Equal Protection Clause of the Fourteenth
> Amendment in disenfranchising him during his period of incarceration. Having

> vindicated his constitutional rights, Plaintiff is also entitled to an award of nominal damages. *Smith v. City of Chicago*, 913 F.2d 469, 473 (7th Cir. 1990) (quoting *Carey v. Piphus*, 435 U.S. 247, 266-267 (1978)); *Familias Unidas v. Briscoe*, 619 F.2d 391, 402 (5th Cir. 1980).

Snyder's Summary Judgment Brief at 19 (Dkt. No. 44).

## II. DISCUSSION

"An Article III court enjoys jurisdiction over a case only if the plaintiff demonstrates that he suffered an injury in fact,[1] the defendant's actions caused the injury, and the remedy he seeks would redress his injury." *Bell v. Keating*, 697 F.3d 445, 451 (7th Cir. 2012). Accordingly, the Court "must, on its own, dismiss a case as moot when it cannot give the petitioner any effective relief." *Medlock v. Trustees of Indiana University*, 683 F.3d 880, 882 (7th Cir. 2012) (citation omitted). For the reasons set forth below, the Court finds that to be the situation in this case.

### A. Availability of Nominal Damages

In response to the Court's request for briefing, Snyder argues that "this case is not moot for the reason that because Snyder can demonstrate a constitutional injury he is entitled to at least nominal damages against Defendants Silcott and Brunette, neither of whom is entitled to sovereign immunity."[2] Snyder Jurisdiction Brief at 1. While the Court agrees that the availability of nominal damages would be sufficient to render this case justiciable, the Court

---

[1]The Court expresses no opinion regarding whether the Defendants' actions in this case violated the Constitution; rather, for purposes of this Entry, the Court will assume that Snyder's rights under the Fourteenth Amendment were violated when he was disenfranchised during his incarceration.

[2]In ordering the parties to brief the issue of whether there is a justiciable claim in this case, the Court noted that while Snyder seeks declaratory judgment, "declaratory judgment is appropriate only when the court's ruling would have an impact on the parties," *Cornucopia Institute v. U.S. Dept. of Agriculture*, 560 F.3d 673, 676 (7th Cir. 2009) (citing numerous cases), and because Snyder is no longer incarcerated, the declaration he seeks—which pertains to the rights of incarcerated persons—would be inapplicable to him. Snyder does not dispute that fact; rather, he relies only upon his request for "at least nominal damages" to demonstrate the presence of an actual case or controversy.

disagrees that nominal damages are available to Snyder.

Snyder was disenfranchised pursuant to Indiana Code 3-7-46-2, which provides: "A person imprisoned following conviction of a crime is disenfranchised during the person's imprisonment." *See also* Ind. Code 3-7-13-4(a) (providing that a person who is convicted of a crime and incarcerated "is deprived the right of suffrage by the general assembly pursuant to Article 2, Section 8 of the Constitution of the State of Indiana"). Assuming that Snyder suffered a constitutional injury, that injury was caused by the law of the State of Indiana. Snyder concedes, as he must, that nominal damages are not available from the State—including state officials sued in their official capacities. Snyder nonetheless argues that he can recover "at least nominal damages" from the County Defendants because it was the County Board that removed his name from the voter registration records.

Snyder's argument improperly treats removal from the voter rolls as synonymous with disenfranchisement. However, even if the constitutional injury at issue in this case were the removal of Snyder from the voter rolls rather than his disenfranchisement—which, again, occurred by operation of the statute prior to the date he was removed from the voter rolls—the County Board could not be held liable for that injury because the removal was mandated by state law and a county "cannot be held liable under section 1983 for acts that it did under the command of state or federal law." *Bethesda Lutheran Homes and Services, Inc. v. Leean*, 154 F.3d 716, 718 (7th Cir. 1998). Snyder argues that the County Defendants were not acting under compulsion of state law because they "were not required to interpret the words 'crime' or 'criminal conviction' in [the state statutes] so expansively as to require the removal of individuals from voting rolls during their incarceration following a misdemeanor conviction." Snyder Jurisdiction Brief at 4. This argument is belied by the relevant statutory scheme,

4

however.

As noted above, Indiana Code 3-7-46-2 provides that "[a] person imprisoned following conviction of a crime is disenfranchised during the person's imprisonment." The remainder of that chapter of the Indiana Code sets forth what actions are to be taken as a result of that disenfranchisement. Indiana Code 3-7-46-1 provides that "a county voter registration office shall remove from the official list of registered voters the name of a voter who is disenfranchised under this chapter due to a criminal conviction." The statute then establishes the means by which the county voter registration office is to be informed that a person has been disenfranchised due to conviction and incarceration. The section relevant to this case, Indiana Code 3-7-46-6,[3] provides:

> (a) Not later than:
>
> (1) January 31;
>
> (2) April 30;
>
> (3) July 31; and
>
> (4) October 31;
>
> of each year, a county sheriff shall provide the county voter registration office with a report containing the information set forth in subsection (b) for processing under section 8 of this chapter.
>
> (b) The list required by subsection (a) must identify each person who:
>
> (1) is a resident of Indiana;
>
> (2) has been convicted of a crime; and
>
> (3) has been placed in a county correctional facility during the previous quarter.

Indiana Code 3-7-46-7.5 then provides:

---

[3] Other sections relate to persons incarcerated in an Indiana Department of Correction facility and persons convicted of a felony in federal district court.

> If the information provided under section . . . 6 of this chapter indicates that the person is disfranchised under section 2 of this chapter, the county voter registration office shall:
>
> (1) remove the name of the person from the voter registration records; and
>
> (2) enter the date and other information regarding the cancellation into the computerized list under IC 3-7-26.3;
>
> on an expedited basis, as required under 42 U.S.C. 15483.

Contrary to Snyder's argument, this statutory scheme does not give a county voter registration office the discretion to determine whether a person has "been convicted of a crime." Rather, the statute dictates that a person who (1) is incarcerated and (2) has been convicted of a crime is disenfranchised while he or she is incarcerated; the statute then mandates that the county sheriff send the county voter registration office a list of those who (1) are incarcerated in the county jail and (2) have been convicted of a crime; and the statute finally mandates that the county voter registration office recognize the disenfranchisement of the persons who appear on that list by removing their names from the voter registration records. The County Defendants therefore were acting under the command of state law when they removed Snyder's name from the voter registration list, and they cannot be held liable under § 1983 for doing so. Accordingly, no damages are available to Snyder in this case.

### B.  Availability of Injunctive Relief

The Defendants agree that no damages are available to Snyder. However, they allege that a justiciable claim exists because Snyder "also seeks an injunction that would require the County Defendants to restore his voting rights under his *pre-incarceration* registration." Defendants' Jurisdiction Brief at 5 (emphasis in original) (citing Amended Complaint at 7, ¶ 2). The problem with this argument is two-fold. First, Snyder does not actually seek the injunction described by the Defendants; rather, the cited paragraph asks the Court to "[i]ssue a permanent and

6

preliminary injunction preventing Defendants and all those acting in concert with them from removing Snyder and other persons similarly situated, who have been convicted of and incarcerated for misdemeanors, from the state-wide voter registration list." Inasmuch as Snyder already has been removed from the list, Snyder has no standing to seek the injunction he asks for, as it would have no effect on him; one cannot "prevent" something that has already occurred.

Perhaps recognizing this fact, in this motion for summary judgment, Snyder seeks declaratory judgment and nominal damages; he does not seek any injunctive relief.[4] The second, more fundamental, problem with the Defendants' argument is that the issuance of such an injunction would not provide Snyder with any real relief at all. Snyder is no longer disenfranchised. State law provides that he was free to re-register to vote the day he was released from jail, and he remains free to do so. Snyder needs no injunction to obtain the "relief" that the injunction described by the Defendants would give him.

### III.  CONCLUSION

Because this Court is unable to give Snyder any effective relief, this case does not present a live case or controversy. Accordingly, this case must be **DISMISSED** for lack of subject matter jurisdiction.

SO ORDERED:  03/28/2013

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic notification

---

[4] The Court recognizes that, in his reply to the Defendants' Jurisdiction Brief, Snyder states that he "concurs with State Defendants regarding the justiciability of his claim for injunctive relief."

7